## DUBILIER CONDENSER CORPORATION v. AEROVOX WIRELESS CORPORATION.

### SAME v. SCHECKER et al.

### Nos. 4452, 4729.

District Court, E. D. New York.

July 17, 1930.

Edwards, Bower & Pool, of New York City (C. V. Edwards and F. A. Bower, both of New York City, of Counsel), for plaintiff.

Dean, Fairbank, Obrieght & Hirsch, of New York City (Morris Hirsch, of New York City, of counsel), for defendants.

GALSTON, District Judge.

The main case involves the alleged infringement of letters patent No. 1,688,478, for an improvement in an electrical condenser, granted October 23, 1928, to A. J. Weiss, and by him assigned to the plaintiff herein.

The answer, in addition to setting up the usual defenses of invalidity and noninfringement, alleges as a counterclaim infringement of letters patent reissue No. 17,605, for an electrical condenser and method for making the same, granted to H. F. Schecker February 25, 1930, and by him assigned to the defendant.

As to this counterclaim, at the trial it was conceded that the plaintiff had a shop right in the Schecker patent. It was contended, however, that beyond that plaintiff had no right to aid and abet infringement of the Schecker patent by others.

A second counterclaim of unfair competition was abandoned at the trial.

The object of the Weiss invention was to provide a novel condenser and a method of impregnating it. The old method was to wind two or more sheets or strips of conductive material, such as metal foil, and separate the sheets or strips by sheets of paper or other insulation. The roll was then compressed into what the inventor calls a prism, and provided with terminals, so that the conducting material could be connected to an outside circuit. The inventor says condensers of this type were well known, and that, when compressed into final form, they were usually impregnated with melted paraffin or other liquid insulation to fill the spaces between the layers of insulation and to prevent the occurrence of small cracks which would admit air or moisture. During the process of impregnation the condenser body was subjected to pressure. After cooling, the wax or other liquid insulation solidified and tended to close any air spaces and thus sealed the interior of the condenser.

The inventor, however, found imperfections in this art, for during the cooling operation the liquid insulation undergoes shrinkage. In consequence there were spaces near the ends of the condenser at the top or bottom or both and at the corners. Such a condenser, the inventor points out, may subsequently admit air and moisture through these voids.

To overcome these difficulties and to insure full impregnation throughout the body of the condenser, the inventor suggests putting the condenser through a second process of impregnation after the impregnation with wax has been completed. He says:

"To this end, the condenser after being removed from the tank containing the melted wax, is placed, while still hot, in a tank containing cold petrolatum, or the like, the tank being pumped for about half an hour to remove air. The body $1$ is completely covered by the petrolatum and later air under atmospheric pressure is admitted to the tank. The heat in the body $1$ melts the petrolatum with which it comes into contact, and the petrolatum will soak into the body $1$ at the ends and corners, as indicated at the vertical shade lines $4$, and any voids at the ends and corners will thus be filled by the liquid petrolatum. The condensers remain in the petrolatum until they become cool, and as the paraffin shrinks and contracts up to the point where it solidifies, for example at 130° F., or thereabout, it is followed up by the still liquid petrolatum which penetrates in through the ends as far as the wax $3$ shrinks. Thus, all voids are filled up, and as the cooling continues until it approaches room temperature, the petrolatum also becomes thicker and more nearly solid, and will not run out of the body of the condenser, but stick inside of the ends and corners thereof, and thus complete the effect which the impregnation with paraffin does not fully insure."

From the specification and indeed from the art as practiced by the plaintiff prior to the alleged invention, it appears that it was certainly old to manufacture such a condenser as is described in the patent with a single impregnation. It was also admittedly old to perform a primary wax impregnation in clamps or presses. It was old likewise to cool the condenser sections in air after removal from the wax-impregnating tank, and, as Mr. Dyer, plaintiff's expert, admitted, it was also old to take condensers out of the wax bath and dip them in some other dielectric medium.

What then was Weiss' contribution to the art? Apparently it consisted in immersing the condenser, after having been removed from the tank containing the melted wax, and while still hot, in a tank containing cold petrolatum or the like, the tank being pumped for a half hour to remove air.

Bearing directly on the subject of novelty is the patent to Davis and Simons, No. 1,-323,026, November 25, 1919, for a method of manufacturing insulation. The invention relates to the production of impregnated porous insulation for electrical conductors, and, while particularly specifying paper insulated electrical cables, the patent states that it is not in its general features limited to that specific service. The inventor says:

"In the manufacture of cables and other articles, in which an electrical conductor is covered with an insulation of porous material filled or impregnated with insulating compound, it is often requisite to employ as the impregnating compound a substance of great viscosity, a substance which at ordinary atmospheric temperatures is scarcely to be called fluid at all, but approximates rather the solid condition. * * *

"When once the impregnation has been accomplished a difficulty arises: If the thus far finished cable be removed from the bath of insulating compound while the bath is still hot, the still fluid material will partially drain away, the pores of the impregnated body will be in some degree emptied, and air spaces will be formed. These air spaces will remain after the lead sheath has been applied to the cable, or after it has otherwise been completed, and will be sources of weakness, injurious to the cable as an integral effective structure. * * *

"Our invention consists in providing, in addition to the bath of viscid material, a second bath of relatively light and fluid oil or other suitable liquid, which second bath is maintained cool, ordinarily at or near atmospheric temperature. When impregnation has been effected in the first bath, and while the bath and the contained cable are still hot, the cable is removed (as may then easily be done) from the first bath and quickly immersed in the second bath. The cold liquid of the second bath, coming into contact with the hot cable, will at once chill and harden the insulating compound in its pores and cause it to become viscid so it will not run out nor will it, even though the second bath be a bath of oil, diffuse in any appreciable degree in the lighter oil of the second bath."

To what was taught by Davis and Simons as to the method of impregnating a condenser, it seems to me Weiss added very little, if anything. It is true that a condenser for radio purposes presents in the large different problems than do electrical cables, but, so far as inherent efficient impregnation of the insulation is concerned, the same problem is presented.

Weiss sought to avoid an imperfectly impregnated insulation. That is exactly what Davis and Simons sought and apparently found. Certainly claim 2 of the Weiss patent, which reads: "The method of treating a condenser body which comprises impregnating the same in heated wax, immersing the body while heated in cooling oil, and permitting the body to cool while so immersed"—is completely anticipated by Davis and Simons, as is also claim 4.

Of the process claims, that would leave for consideration claims 1, 3, 5, and 6.

Was there invention in immersing the impregnated condenser in a second bath of insulating material having a lower melting point than the first? Was there invention in specifically naming paraffin wax as the first impregnating material and petrolatum as the second? It may be conceded that Davis and Simons make no point or disclosure of the relative melting points of the two impregnating materials, and, since there is apparent virtue in the selection of an impregnating material for the second bath, which has a lower melting point than the first, method claims 1, 3, 5, and 6 within their narrow scope may be held valid.

As to the product claims, claim 7 is invalid, as being disclosed substantially in Davis and Simons; but the other product claims are valid within their narrow scope.

We now approach the question of infringement. The defendant makes a paper wound condenser for use in the radio art in substantially the same form as that shown in the Weiss patent. The condensers are first

impregnated with a substance known as Halowax. After a cooling period, the condensers thus impregnated are immersed in an oil tank. The particular kind of oil used is known as tursel medium oil. Is tursel oil such an insulating compound as Weiss defines in his specification and claims? In terms I suppose it cannot be doubted that the oil used by the defendant is an insulating compound having a lower melting point than Halowax. On the other hand, there can be no doubt that what Weiss really sought as a second impregnating material was a very heavy compound such as petrolatum.

Mr. Weiss was most frank. He said that he had entered the employ of the plaintiff with a sort of roving commission to experiment about the plant with a view to improving the processes employed. Late in the year 1926, he was asked to take charge of the impregnating department, though in the summer of the same year, probably in August, he said he had been working on condensers in an effort to overcome a leakage condition. First he impregnated sections in petrolatum alone. He found that would not do. The witness was very vague about when he first used the double impregnation. Apparently there was some discussion in the plant, and this may have been brought on by the suggestion of Mr. Schecker, to use a second impregnating bath of oil. Weiss testified: "Well, I protested against the use of oil, in fact, I probably was very strong in my language about it. I felt it would not stay there. Before that I had found that any of these thin secondary agents, dipping agents, whatever you want to call them, that they wouldn't stay there, that if you set them on a piece of wood the capillary attraction would pull them right out. I remember saying that we always wanted a much heavier medium, preferably something which would stay in there, and the light stuff would get out. But due to an emergency which existed there—I do not recall which job it was, probably the Willard job—somebody inveigled the engineering department to O. K. the purchase of this new process, this dipping in oil process or oil cooling, as it was called around

the shop. * * * In fact, even at that time I wasn't, didn't favor the matter at all, made no bones about it. I still didn't believe in any of the thinner oils. I was hoping to get a much better result and a longer life with petrolatum or a heavier medium, which of course could not be determined except by an accelerated life test, which would take in the order of about six months, and we had no time for that," etc.

Then later he said: "Mr. Schecker came along with oil and I think he just sold the idea of D. T. E. oil to the plant, and over my head he went. It was a quick way out of it. I never thought it was the right thing to do to put in D. T. E. oil or lighter oil, but somehow or other it was put across due to the urgency."

In view of the foregoing, definitely it appears that the oil used by the defendant was the contribution to the art of Schecker and not of Weiss, and in all fairness Weiss' claims should not be so construed as to include the very process which he condemned.

Hence I conclude that Weiss' claims must be limited, so far as the second impregnation is concerned, to petrolatum or the like, i. e., a heavy oil, and that as so construed, the defendant does not infringe. Indeed, from the testimony and particularly from the admissions of Weiss, it would seem that Schecker had suggested oil before Weiss adopted petrolatum.

As to the counterclaim on Schecker reissue patent No. 17,605, I find no evidence that the plaintiff has gone beyond the exercise of the shop right, which the defendant concedes the plaintiff is entitled to enjoy. It thus becomes unnecessary to discuss the validity of the Schecker patent.

Finally there is the second action, in which the plaintiff seeks an assignment of the Schecker patent from the defendants. There was no proof offered by the plaintiff of any agreement such as is alleged in the complaint, and that action must fail.

Decrees may be entered accordingly dismissing both bills and counterclaims.