## AEROVOX WIRELESS CORPORATION v. POLYMET MFG. CORPORATION.

District Court, S. D. New York.
June 27, 1932.

Dean, Fairbank, Hirsch & Foster, of New York City (Morris Hirsch, of New York City, of counsel), for plaintiff.

Schechter, Lotsch & Sulzberger, of New York City (John L. Lotsch, of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge.

The only question presented is as to the validity of the patent in suit which is attacked on the two grounds of lack of invention and prior public use.

The patent covers a method of manufacturing one type of electrical condensers used in radio receiving sets. Such condensers consist of two long strips of metal foil which act as electrical conductors with a strip of paper between them which acts as the dielectric. The foils with the intervening paper are wound tightly on a spindle and the roll is then compressed until it forms a flat, compact article which will conserve space in a radio cabinet.

It is essential to eliminate all empty spaces between the foils and to exclude all air, gas, and moisture from the interior of the condenser. To accomplish this the rolls of foil and paper while in the compressing clamp are subjected to a vacuum and then submerged in hot paraffine or halowax which impregnates all the paper and substantially fills all the interstices. The clamp must be removed from the tank of molten paraffine or halowax before it is cold or the solidifying process would raise great practical difficulties in freeing the condensers. But if the clamp and condensers are cooled in air the difference in coefficients of expansion of the paraffine or halowax and of the paper and foils causes the impregnating medium to contract more and to create voids at the edges or in the interior of the condensers.

The patent in suit covers merely a second impregnation of the condensers to prevent the creation of voids in the cooling process. It discloses the step of submerging the clamp containing the hot condensers in oil immediately after their removal from the paraffine or halowax and permitting them to become thoroughly cool in it so that as the first impregnating medium contracts the oil, which also has dielectric qualities, is drawn into all the interstices. The oil, being liquid at ordinary room temperatures, offers no obstacle to the removal of the condensers when cold, and by capillary attraction or otherwise remains in the interstices after the removal. The cooling under oil serves the incidental purpose of smothering the fumes of halowax during that process.

The only contribution which Schecker, the patent applicant, claims he made to the art was the cooling under oil, and the first question presented is whether this would not have occurred to any ordinary skilled workman familiar with the prior patents and with the methods in general use. In the first place, it should be recognized that, at the time of his alleged invention, October, 1926, he, himself, was less than a skilled workman in this particular field. He was employed at the Dubilier plant as a foreman in charge of the winding of the strips of foil and paper, and had nothing to do with the subsequent impregnation or assembling into completed condensers. He had practically no knowledge of electricity nor of the essentials of effective condensers. He did not know how a second impregnation might operate to prevent the defects, and admits that his alleged discovery was unguided by any experience or research on his part. He claims to have blindly tried the experiment of cooling under oil and as a stroke of luck found it beneficial. All this would, of course, not prevent his having made a patentable invention, but it is a circumstance to consider in determining whether an ordinary workman more skilled than he would not have thought of the same thing.

Indeed, the same thing had been thought of and tried out and a written record made of the process in the Dubilier plant more than

a year before October, 1926, when Schecker claims to have discovered it. The testimony of Menschik and the circumstances of the production of his shop book leave no room for doubt. Furthermore, by the early part of 1927, three or four months after Schecker's alleged discovery, various competing companies were employing the same method without any apparent communication of it by either Schecker or the Dubilier Company, and the practice was so general that the oil salesmen were using it as a selling point. Aside from the above instances, the trade had used oil to impregnate other types of condensers and had practiced double impregnation with it.

The problem of obviating defects caused by the air cooling of the condensers impregnated with paraffine or halowax had not been at an acute stage for a long period, and apparently it was solved by the same method in different plants shortly after it was presented. The plaintiff's own evidence shows that the increased production of paper-wound condensers in the summer and fall of 1926 first gave rise to the problem.

A prior patent issued in 1919 under No. 1,323,026 to Davis and Simons disclosed a secondary immersion in cool oil for a paper-wound telephone cable which had previously been impregnated with hot pitch. The cable had to be removed from the pitch-tank before the cooling had progressed far enough to produce solidification, and that entailed danger of the pitch flowing off the cable, with resultant voids in the insulation. To obviate this, Davis and Simons proposed an immediate second immersion in cool oil which would be liquid at ordinary temperatures, thus permitting removal of the cable from it without practical difficulties, and which would have the effect of quickly cooling and solidifying the pitch.

The Davis and Simons patent was considered by the District Court for the Eastern District of New York in a suit by the Dubilier Corporation against this plaintiff. Dubilier Condenser Corporation v. Aerovox Wireless Corporation, 42 F.(2d) 485, affirmed without opinion. The Dubilier Corporation sued on a patent issued to Weiss for a method of cooling paper-wound condensers which had been impregnated in hot paraffine or halowax. Weiss' method was like the plaintiff's here in suit, except that the clamp containing the condensers was submerged in petrolatum, which is solid at ordinary temperatures, instead of in oil, which is liquid.

Judge Galston in the District Court held the Weiss patent valid over Davis and Simon, but upon a very narrow ground. The general tenor of his opinion seems to be that the oil cooling of wax impregnated condensers does not involve invention over the oil cooling of pitch impregnated cables. However that may be, I am convinced from the evidence in this case that any ordinary skilled workman would have thought of oil cooling for such condensers and would have practiced it with the condensers still in the clamps as Schecker specified.

The other ground of invalidity, two years' prior public use, was also amply proved. Schecker made his discovery in October, 1926, and did not file his original application until February 28, 1929. Undeniably the method was in general use throughout the trade as early as the Spring of 1927, which was almost two years before his application, and the plaintiff's own witnesses testified it was in commercial use in the Dubilier plant in October, 1926, which was two years and five months before the application, and in the plaintiff's own plant in January or February, 1927, which would also be more than two years before the application. Schecker testified that the use in the Dubilier plant lasted only two or three weeks, and was discontinued until about May, 1927, when it was resumed, and that during the original period it was in no sense public. The evidence to the contrary, however, is so overwhelming as to leave no reasonable doubt in my mind that from October, 1926, to the present time the Dubilier plant has continuously used that method without the slightest concealment. During October, November, and December of 1926 the company made by that method over 100,000 condenser sections for the Willard Company and the Victor Company, and many more for other customers during the subsequent months. While it is true that cooling in petrolatum was used on some orders, this presented practical difficulties in handling which makes it extremely improbable that oil cooling was ever abandoned for such jobs as could be treated with it. In fact, Exhibit R shows that in November, 1926, oil cooling was made a standing specification for commercial production in the plant.

This use of the method in the Dubilier factory was public. All the condensers made under it were immediately shipped to the customers, and plainly showed to any one familiar with the art that they had been cooled in oil. The plaintiff's own evidence

leaves no doubt but that any experienced man who examined them would have known exactly the process to which they had been subjected. Furthermore, the conditions in the Dubilier factory were such that all the numerous employees and visitors could have observed the process, and I do not believe there was any attempt at secrecy.

Decree for defendant, with costs, on the ground that the patent is invalid. Settle decree on notice.